UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA PINEDO BELTRAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:22-cv-01339-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff raises the following issues:

1. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints.

2. The ALJ's RFC determination is not supported by substantial evidence because she failed in her duty to properly consider whether Plaintiff met or medically equaled a listed impairment.

1

(ECF No. 16, p. 2).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Subjective Complaints

Plaintiff notes that the ALJ provided multiple reasons to discount her subjective complaints but argues that none "are supported by the record, legal precedent, or the nature of Plaintiff's impairment," and her "testimony reflects greater difficulties and limitations than acknowledged in the RFC." (ECF No. 16, p. 8). Defendant counters that "the ALJ provided multiple, specific reasons for finding Plaintiff less limited than alleged, and her conclusions were reasonable in light of the evidence." (ECF No. 19, p. 10).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing

standard."). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

As the ALJ's RFC assessment is ultimately at issue here, the Court notes that a claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple tasks with occasional changes in the work routine, *can have no interaction with the public, and can have occasional interaction with coworkers and supervisors.*

(A.R. 30) (emphasis added).

Beginning with Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 31). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's subjective complaints as follows:

> The undersigned considered all of the claimant's subjective complaints, including

> statements from the administrative hearing and written submissions. At the administrative hearing, the claimant alleged that her anxiety, depression, and panic attacks primarily limited her ability to work. The claimant stated that if she has to go somewhere, she will have a panic attack. She stated that if she is in her room, she is "fine." She asserted if she has an appointment or has to see someone, she has "real bad" anxiety. The claimant indicated that she has symptoms of moving her legs back and forth due to her anxiety. She indicated it also affects her arms and sometimes she cannot breathe. The claimant explained that when she is out somewhere and she has a panic attack, she usually waits in the car. She stated that she rarely goes to the store. She indicated that it is a "challenge" to do things and only showers weekly. She reported her depression worsened once her husband passed away. The claimant asserted she used to take Prozac but it stopped working and she is taking another medication now. She stated she is "always crying." She added she has difficulty with concentration and her son helps her with grocery shopping. The claimant's statements in the written submissions mirror the subjective complaints from the claimant's testimony.

(A.R. 31).

Thereafter, the ALJ provided an extensive overview of the record, providing the following reasons for not fully crediting Plaintiff's subjective complaints:

> Since 2019, the claimant's treatment record does not support her allegations of disabling symptoms. The claimant received treatment at Kern Behavioral Health and Recovery Services (Exs. 2F-4F). In some treatment notes, she reported symptoms including crying spells, low self- esteem, feeling worthless, being sad and emotional, and having mood swings, and she received treatment such as individual therapy, individual rehabilitation interventions, and medication management including use of hydroxyzine, fluoxetine, and Topiramate (Ex. 2F, pp. 9, 11-12, 23, 32, 41, 53). However, the record supports the claimant's impairment was amenable to this not particularly aggressive treatment.
>
> Specifically, initially, mental status examinations noted: she was observed to conceal her eyes; her mood was anxious, depressed, hopeless, and sad; her affect was restricted, and her voice was noted to be filled with sadness; her recent memory was poor, as well as her remote long-term memory; and her judgment was assessed as impaired. However, subsequent examinations with her psychiatrist consistently noted she was cooperative with unremarkable behavior, normal speech, full orientation, normal abstraction, good judgment, and fair insight and memory, and intact attention and concentration (Exs. 2F, pp. 16-19, 24-25, 35, 44, 54-55, 64-65, 74-75; 3F, pp. 11-12, 21-22, 31-32). At the assessment on March 10, 2020, regarding the claimant's "Current Impairments due to Mental Health Symptoms," it was documented that the claimant's independent living, social relationships, vocation/education, and physical care were all "severe" (Ex. 2F, p. 10).
>
> Her condition appeared to be situational and exacerbated by stressors such as a family deaths and family health issues (see Exs. 2F, p. 24; 3F, p. 30). For instance,

on a visit dated September 1, 2020, the claimant stated she was doing horrible, as her husband was in intensive care on life support (Ex. 3F, p. 30). On the mental status examination, her mood was dysphoric and depressed (Ex. 3F, p. 31). Then, on a telehealth visit dated October 20, 2020, the claimant stated that her husband had died, and since then she had been having difficulty with short-term memory as well as concentration and attention span (Ex. 4F, p. 20). On the mental status examination, her mood was anxious, depressed, sad, and overwhelmed (Ex. 4F, p. 21). Later, at a return telehealth visit dated December 1, 2020, the claimant stated she was not doing good, as she was dealing with her son being in the hospital due to diabetes. She stated she is sick, can't sleep, and eat right now because she is so worried, and has diarrhea and headaches (Ex. 4F, p. 27). On the mental status examination, her mood was dysphoric (Ex. 4F, p. 29). On a visit dated January 27, 2021, the claimant reported she was feeling sick, saying there was something wrong with her stomach, having diarrhea, and headaches. She also noted that she is very depressed, and was having suicidal ideation, so she stopped the Lexapro (Ex. 4F, p. 35). On the mental status examination, her mood was dysphoric (Ex. 4F, p. 37).

The records generally showed that the effects of medication were usually noted, addressed, and modified, if needed. For instance, on May 30, 2019, she stated that she stopped the Topamax as she was gaining weight, causing her to be frustrated (Ex. 2F, p. 34). The claimant was continued on the fluoxetine for her mood and anxiety; she started on gabapentin for mood stability, and the Topamax and hydroxyzine were discontinued (Ex. 2F, p. 41). Then, on November 21, 2019, the claimant claimed she had mood swings, despite compliance with her medications (Ex. 2F, p. 43). Hence, the claimant was continued on the fluoxetine for mood and anxiety, the gabapentin was increased for mood stability, and clonidine was added for sleep (Ex. 2F, p. 51). Then, on February 11, 2020, her psychiatrist increased the dosage of fluoxetine for mood and anxiety, continued the gabapentin and clonidine, and added Saphris for mood and anxiety (Ex. 2F, p. 61). On a telehealth visit dated April 15, 2020, the claimant stated that the Prozac was making her hot flashes "stronger and more intensifying," so she stopped this medication, and she also stopped the Saphris due to hot flashes (Ex. 2F, p. 63). Thus, her psychiatrist discontinued the Saphris and Prozac, and she was started on Lexapro for mood and anxiety (Ex. 2F, p. 71). On a telehealth visit dated June 23, 2020, the claimant requested a higher dose of the Lexapro, as she continued to have a lot of anxiety but improvement in her depression (Ex. 3F, p. 10). The claimant was continued on gabapentin and clonidine, and the Lexapro was increased for mood and anxiety (Ex. 3F, p. 18).

Although her symptoms were noted to have become exacerbated due to her husband's death and adult son's hospitalization, her depression improved thereafter and in March of 2021 she reported doing a lot better with depression (Ex. 4F). Indeed, at an annual reassessment with Kern Behavioral Health and Recovery Services on March 4, 2021, the claimant continued to report symptoms of depressed mood, anxious mood, excessive worry, racing thoughts, lack of motivation, lack of interest, poor sleep, restlessness, increased energy, difficulties

concentrating, mood swings, and isolative behavior (Ex. 4F, p. 6). However, she stated that she was "doing a lot better than before with my depression" (Ex. 4F, p. 8). On the mental status examination, her mood was anxious and she reported a lack of motivation, but she was noted to be cooperative with normal affect, speech, thought process, and thought content (Ex. 4F, p. 13-15). Moreover, regarding the claimant's "Current Impairments due to Mental Health Symptoms," it was documented that the claimant's independent living, social relationships, vocation/education, and physical care were all "moderate" (Ex. 2F, p. 10). The undersigned notes that on March 10, 2020, as detailed above, they were all rated "severe" (Ex. 2F, p. 10); thus, the change of the rating to "moderate" shows improvement of mental symptoms.

On a telehealth visit dated March 5, 2021, the claimant noted that she continues to have problems with her stomach, diarrhea, headaches, and no energy to do anything (Ex. 4F, p. 45). On the mental status examination, her mood was dysphoric but it was noted she had adequate sleep and appetite as well. She was also noted to be cooperative with normal affect, speech, thought process, and thought content with good judgment and fair insight and memory (Ex. 4F, pp. 46-47).

. . . .

Overall, the claimant's statements regarding the alleged intensity, persistence, and limiting effects of her symptoms are inconsistent with the medical evidence and the other evidence of record. In this case, the claimant alleged that her mental impairments limited her ability to perform all work. The medical evidence, however, suggests that the claimant's symptoms were not as profound as she claimed. Specifically, her mental status examinations did not show findings to an extent that would warrant the finding of greater limitations in the residual functional capacity. As detailed above, her mental status examinations were generally normal or only showed mild to moderate findings. In addition, although her treatment notes initially indicated a rating of severe impairments in functioning, these ratings were subsequently changed to moderate impairment, which is consistent with the treatment notes as a whole. For instance, in July 2020, she reported being sick from the heat but was otherwise ok (Ex. 3F). Although her symptoms were noted to have become exacerbated due to her husband's death and adult son's hospitalization, her depression improved thereafter, and in March 2021, she reported doing a lot better with depression (Ex. 4F).

The undersigned also finds that the degree of the claimant's subjective complaints is not comparable to the extent or frequency of treatment sought by the claimant. In fact, the claimant's treatment regimen was not particularly aggressive. There is no evidence during the claim period of the claimant being hospitalized for psychiatric treatment or receiving regular psychotherapy. Furthermore, the record reveals relatively infrequent trips to a doctor for the allegedly disabling symptoms as well as the lack of recent treatment. In general, treatment has been somewhat conservative and/or standard and infrequent, with appointments only about every one to two months (*see* Exs. 2F-4F).

> Moreover, as detailed above, the claimant described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant's ability to participate in such activities is inconsistent with the claimant's statements concerning the alleged intensity, persistence, and limiting effects of her symptoms. For instance, her ability to handle basic daily activities and live independently is more consistent with an inability to perform simple tasks with only occasional changes in routine than with an alleged inability to do any work. Similarly, her ability to maintain a limited number of relationships is more consistent with an ability to perform work requiring only occasional interaction with coworkers and supervisors (and no interaction with the public) than with an alleged inability to handle any social interaction at work.
>
> [The] claimant's statements regarding the alleged intensity, persistence, and limiting effects of her symptoms are also inconsistent with the medical opinions of record. There is no medical opinion consistent with her allegations of greater disability.

(A.R. 31-34).

As seen above, the ALJ discounted Plaintiff's subjective complaints, in part, because there was a lack of supporting evidence. For example, "mental status examinations did not show findings to an extent that would warrant the finding of greater limitations in the [RFC]" and there was "no medical opinion consistent with her allegations of greater disability." (A.R. 34). While the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor, and was properly considered here. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Additionally, the ALJ discounted the degree of Plaintiff's subjective complaints because the record was inconsistent with disability. Although Plaintiff criticizes the ALJ as "focus[ing] on benign findings to support her conclusion that Plaintiff was not as limited as she alleged," the Court disagrees with this characterization of the opinion. (ECF No. 16, p. 8). Rather, as seen above, the ALJ noted findings that would support disability, including that "mental status examinations noted [that] she was observed to conceal her eyes; her mood was anxious, depressed, hopeless, and sad; her affect was restricted, and her voice was noted to be filled with sadness; her recent memory was poor, as well as her remote long-term memory; and her judgment

1    was assessed as impaired." (A.R. 32). But despite such exams, "her mental status examinations
2    were generally normal or only showed mild to moderate findings." (A.R. 34). Moreover, her
3    symptoms were "exacerbated due to her husband's death and adult son's hospitalization," with
4    "her depression improv[ing] thereafter." (A.R. 34); *see Chesler v. Colvin*, 649 F. App'x 631, 632
5    (9th Cir. 2016) (unpublished) ("The ALJ provided specific, clear and convincing reasons for
6    rejecting Chesler's subjective symptom testimony. First, the record supports the ALJ's conclusion
7    that Chesler's mental health symptoms were situational, and so unlikely to persist once Chesler's
8    circumstances improved.") (internal citation omitted); *Warre v. Comm'r of Soc. Sec. Admin.*, 439
9    F.3d 1001, 1006 (9th Cir. 2006) (noting that improvement is a factor that can be considered for
10   purposes of whether a claimant is disabled).

11           Additionally, the ALJ discounted Plaintiff's subjective complaints because they were
12   inconsistent with the treatment she received: "There is no evidence during the claim period of the
13   claimant being hospitalized for psychiatric treatment or receiving regular psychotherapy" and
14   "the record reveals relatively infrequent trips to a doctor for the allegedly disabling symptoms as
15   well as the lack of recent treatment. In general, treatment has been somewhat conservative and/or
16   standard and infrequent, with appointments only about every one to two months (*see* Exs. 2F-
17   4F)." (A.R. 34). While Plaintiff argues this was an improper basis to discount her symptoms, the
18   Court disagrees. (ECF No. 16, p. 10). True, the Ninth Circuit has "criticized the use of a lack of
19   treatment to reject mental complaints both because mental illness is notoriously underreported
20   and because it is a questionable practice to chastise one with a mental impairment for the exercise
21   of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d
22   1294, 1299-300 (9th Cir. 1999) (internal citations and quotation marks omitted). However, where,
23   like here, "there [is] no medical evidence that [the lack of treatment] [is] attributable to her mental
24   impairment rather than her own personal preference, [] it [is] reasonable for the ALJ to conclude
25   that the level or frequency of treatment [was] inconsistent with the level of complaints." *Molina v.*
26   *Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted, final alteration in original).
27   Importantly, Plaintiff complained of very severe symptoms, including having panic attacks if she
28   had to leave her house, "cry[ing] all the time," and not being able to "be around people." (A.R.

1  51, 55, 60). In was reasonable for the ALJ to discount such complaints, as one reason among
2  many, because her treatment was inconsistent with the severity of her alleged symptoms.
3      Lastly, the ALJ discounted Plaintiff's subjective complaints based on her abilities,
4  including her ability to "live independently" and "maintain a limited number of relationships."
5  (ECF No. 34). While Plaintiff disagrees with this rationale, pointing out that she was limited in
6  certain daily activities, such as cleaning and grocery shopping, the ALJ's ultimate point is valid—
7  the degree to which Plaintiff could function on her own, and her limited relationships, was not
8  consistent with the degree of her asserted symptoms. (ECF No. 16, p. 10). Moreover, it is worth
9  keeping in mind that the ALJ credited Plaintiff's complaints to a certain extent in the RFC,
10 limiting her to "simple tasks with occasional changes in the work routine, [] no interaction with
11 the public, and [] occasional interaction with coworkers and supervisors." (A.R. 30).
12     In short, the Court concludes that the ALJ provided clear and convincing reasons to reject
13 Plaintiff's subjective complaints and thus did not fail to include work-related limitations in the
14 RFC.

### B. Listed Impairment

16 Plaintiff argues that the ALJ erred in evaluating whether she met or medically equaled a
17 listed impairment. (ECF No. 16, p. 5). Specifically, Plaintiff contends that "the ALJ selected only
18 those few pieces of evidence that would support [her] conclusion [that Plaintiff did not meet a
19 listed impairment] without considering the wider trend of the narrative portrayed by the record,"
20 which Plaintiff asserts indicates a marked or extreme limitation in the ability to interact with
21 others. (ECF No. 16, p. 6). Defendant counters that the ALJ cited sufficient evidence to conclude
22 that Plaintiff did not meet or equal a listed impairment. (ECF No. 19, pp. 8-10).
23     At Step Three, the ALJ considers whether a claimant has an impairment that "meets or
24 equals a listed impairment in appendix 1," and if the claimant has such an impairment, he or she
25 is found "disabled without considering [his or her] age, education, and work experience." 20
26 C.F.R. § 416.920(d). The listing of impairments "describes for each of the major body systems
27 impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any
28 gainful activity." 20 C.F.R. § 416.925. "An ALJ must evaluate the relevant evidence before

concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, the ALJ's decision must be supported by substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment [do not meet or equal a listed impairment]." *Lewis*, 236 F.3d at 512. However, "[i]f the evidence can support either outcome, the [C]ourt may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (internal citation omitted).

At Step Two, during which it is determined whether a claimant has a medically determinable impairment that is severe, *see* 20 C.F.R. § 416.920(c), the ALJ concluded that Plaintiff had the following severe impairments: "depression, anxiety, bipolar disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and opioid use disorder." (A.R. 27).

However, at Step Three, the ALJ concluded that none of Plaintiff's impairments met or equaled one of the listed impairments:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.11, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> Based on relevant medical evidence and other evidence in the case record, the undersigned finds the claimant's mental impairments caused: moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.
>
> In an adult function report, the claimant indicated she is able to prepare her own meals (Ex. 7E, p. 5). Moreover, on March 4, 2021, the claimant reported the following:
>
>> INDEPENDENT LIVING: Client reported that her symptoms no longer impair her ability to live independently. Client reported that she is able to cook and clean for herself without prompting. Client reported lack of motivation to practice personal hygiene. Client reported that she showers

> three times a week. Client reported, "I don't put makeup on anymore" because of lack of motivation. Client has no income, but reports assistance is not needed with managing her finances. Client does not have a driver's license and reports she drives without one on occasion.
>
> SOCIAL RELATIONSHIPS: Client reports she has a "good" relationship with her mother, sister, and two children. Client reports that at times she isolates due to irritability, but that is less frequent. Client reported difficulties with mood swings which also impair her ability to communicate with her family. Client reports no friendships outside of her family. Client reports she had a "falling out" with her younger sister, but she reports it was due to her sister's move out of the county.

(Ex. 4F, p. 7).

> There is insufficient evidence to establish that the claimant's ability to learn, recall, or use information to perform work activities independently, appropriately, effectively, and on a sustained basis was more seriously limited. There is insufficient evidence to establish that the claimant's ability to relate to and work with supervisors, co-workers, or the public independently, appropriately, effectively, and on a sustained basis was more seriously limited. Further, there is insufficient evidence to establish that the claimant's ability focus attention on work activities or stay on task at a sustained rate independently, appropriately, effectively, and on a sustained basis was more seriously limited. Moreover, there is insufficient evidence to establish that the claimant's ability to regulate emotions, control behavior, or maintain wellbeing in a work setting independently, appropriately, effectively, and on a sustained basis was more seriously limited. *Additional support for these step three findings is found below in the discussion of residual functional capacity*.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(A.R. 29-30) (emphasis added).

Plaintiff argues that this decision is incorrect because "it was repeatedly noted throughout the record that Plaintiff was unable to leave her home (*see e.g.* Ar. 437); she had behaved in a way that was designed to limit her interaction with others (*see e.g.* Ar. 52); and her inability to be around other people caused her panic attacks upon leaving the house (*see e.g.* Ar. 51)." (ECF No. 16, p. 6).

Two of these record citations come from Plaintiff's hearing testimony. (A.R. 51-52). Notably, in determining that Plaintiff did not meet or medically equal a listing, the ALJ incorporated analysis from the section formulating Plaintiff's RFC. (A.R. 30 – "Additional support for these step three findings is found below in the discussion of residual functional

capacity."). And as discussed in connection with Plaintiff's other issue, the ALJ did not err by discounting her subjective complaints. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (concluding that an ALJ did not err by discussing relevant evidence in the Statement of the Case section, rather than in the Findings section of the opinion). As to Plaintiff's other citation about being unable to leave her home, that record stated that the heat was making Plaintiff and her son sick, they only had "a swamp cooler and no AC," and Plaintiff "doesn't leave the house unless she has to." (A.R. 437). As Defendant points out, this record indicates that the weather, not Plaintiff's mental symptoms, was causing her to stay home. (ECF No. 19, p. 9). In short, Plaintiff has cited no evidence that shows that the ALJ erred in concluding that she did not meet or medically equal a listed impairment.

Accordingly, the Court concludes that the ALJ's Step-three finding was supported by substantial evidence.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **August 29, 2023**    /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE